UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| RANDALL B. HOFLAND, | ) | |
| --- | --- | --- |
| Plaintiff, | ) ) ) | |
| v. | ) ) | 1:09-cv-00172-JAW |
| RICHARD LAHAYE, et al., | ) ) ) | |
| Defendants | ) | |

## RECOMMENDED DECISION (II)

Randall Hofland has now filed an untimely, unsolicited, and inexplicable proposed fifth amended complaint.[1] (Doc. No. 94-1.) I direct the Court's attention to the Procedural Order I entered on March 18, 2011. (Doc. No. 65.) To the best of my knowledge, that procedural order still governs this case and this particular aspect of Hofland's vexatious pattern of litigating and then relitigating his numerous claims. The Procedural Order has never been appealed, vacated, or modified. This current case has been limited to the events associated with the October 23, 2008, roadblock, and the subsequent testimony of Jessica Danielson at Hofland's state criminal trial. According to Hofland's pleadings in this case, he was acquitted of charges in connection with the October 23 roadblock, separate and distinct from the more serious charges of which he stands convicted. His numerous claims against the Perkins family, judges and prosecutors have long since been disposed of in other cases filed in this court. My intent was to give Hofland one final opportunity to plead a viable case in this court related to the searches incident to the

---

[1] Hofland actually calls the pleading his "Supplemental Amendment V" and it is clear from the context of his motion and the opening line of the document that he intends this pleading merely to supplement his complaint. Apparently Hofland thinks that everything pled at Document No. 1 (Complaint) and No. 7 (Amended Complaint) is somehow incorporated into this supplemental document. If Hofland expects this Court to authorize service following screening, it is his obligation to file a single document which is intended to act as the operative pleading. On March 18, 2011, Hofland was told that any new amended complaint had to be "one unified document that does not cross-reference other complaints or attempt to incorporate allegations outside of the amended complaint itself." (Doc. No. 65, at p. 2, ¶ 3).

roadblock and the state court testimony that grew out of those events. My earlier recommended decision explains fully the procedural posture of this case and why Hofland cannot now go back and relitigate claims that have been previously dismissed.

Hofland explains in his motion accompanying the document he has now filed, that this pleading is not really an amended complaint, it is intended to "supplement" all of his prior pleadings, not just in this case but also in related state court actions and related civil actions previously dismissed in this court. Hofland states the following in his motion:

> Hofland has found a style of pleading these claims which should be to the court's liking, and moves for leave to continue clarifying prior amendments based on better access to common law and also to prior notes on same, plus new facts and evidence as well as seasoning to allow proper articulation of justiciable claims. Additional supplements would ease the court's reading of the case, while also allowing Hofland to fine tune his claims.

Motion for Leave to Supplement Complaint, Doc. No. 94. The matter was referred to me to rescreen pursuant to 28 U.S.C. § 1915. I previously entered a recommended decision on June 21, 2011, recommending that the matter be dismissed in its entirety prior to service. (Doc. No. 76.) Without restating the entire procedural history of this and related cases in this court, suffice it to say that my review of the proposed fifth amended complaint does not cause me to change my prior recommendation in any respect. I recommend that this matter be dismissed and that this court adopt the prior recommendation.

**The Supplemental Complaint**

The proposed fifth version of this complaint attempts to resurrect all of Hofland's prior claims against many defendants who were long ago dismissed from related litigation, in addition to adding some new characters. It contains precious little new information about Richard LaHaye, the Searsport police, and claims of Fourth Amendment violations in connection with the events of October 23-24, 2008, the claims that were supposedly the only surviving claims in this

action, given the res judicata effect accorded to other litigation in this Court. Nor does Hofland explain any factual background about Danielson's alleged perjury at his criminal trial, other than to restate his prior conclusory statements about her conspiring with others to falsify records. Instead of focusing his energy on his remaining claim, Hofland has drafted a seven count "supplement" which names as defendants the following individuals: (1) Richard LaHaye; (2) Searsport Police Department; (3) Town of Searsport; (4) Steven Saucier; (5) Jessica Danielson; (6) Michael Larrivee; (7) Eric Bonney; (8) Darrin Moody; (9) James Gillway; (10) Paul Hazard; (11) Eric Walker; (12) Jonah O'Roak; (13) Jason Andrews; (14) William Keith III; (15) Miles Carpenter; (16) others unknown; (17) George F. Perkins; (18) Susan Perkins; (19) Gary Boynton; (20) Lawrence King; (21) Patricia Worth; (22) John Nivison; (23) John Lucy; (24) James M. Bowie; (25) Walter Griffin; (26) Bangor Publishing Company; (27) Tanya Mitchell; (28) The Republican Journal; (29) Village Soup.com; and (30) others unnamed and unknown.

The overarching theme of the seven count "supplement" appears to be that this collection of thirty some private individuals, law enforcement personnel, state prosecutors and complaint justices, state court judges, private insurance defense attorneys, news reporters, and media outlets, both print and web-based, are all united in a vast conspiracy that is either RICO based or in violation of 42 U.S.C. § 1983 designed to undermine Hofland's civil rights. I will attempt to deconstruct the current version of the complaint, as set forth in the seven counts. I have previously explained, in various cases, why Hofland's conspiracy charges fail to state a claim.

**Count 1**

The first count consists of five conclusory paragraphs, featuring the Perkins family and the history of a state court action that has apparently been fully litigated in the Belfast District Court, Docket No. PA-07-18. Taken to task in the complaint for conspiring to undermine

Hofland's civil rights are George Perkins and his daughter, Susan, Eric Walker, Jason Andrews (on my own information and belief, a state prosecutor and a law enforcement officer) and two state court judges, Judge Worth and Justice Nivison.  (Supplement ¶ 5.)  These very issues are currently on appeal to the First Circuit in the case of Hofland v. LaHaye II, 1:11-cv-00053.  All six defendants were previously named in that suit.  This count adds nothing to *this* case which is ostensibly about the October 2008 roadblock and subsequent searches.  In fact, I previously denied a motion to amend in this case which attempted to resurrect the Perkins family dispute and insert it into the allegations of this case.  (Doc. No. 35.)  That order was appealed to the District Court Judge (Doc. No. 40), who affirmed my conclusion that saying that George Perkins and his family were involved in a conspiracy with all these individuals did not set forth plausible allegations under the Iqbal v. Ashcroft, 556 U.S. 662 (2009) pleading standard.  I, of course, also referenced in that prior order denying the motion to amend, the substantial judicial and prosecutorial immunity issues presented by these pleadings.  (Order Mot. Amend at 4, Doc. No. 35.)  There is no reason to reconsider my prior recommendations and orders on these issues.

The underlying theme of this proposed fifth amended complaint is similar to others filed by Hofland.  These judges, prosecutors, law enforcement personnel, the private attorneys, and the Perkins family have engaged in criminal racketeering.  In Hofland's universe, when a judicial officer uses the mails to send Hofland a copy of an order favorable to Perkins, that officer has engaged in racketeering.  (See Recommended Decision at 4, Doc. 11, Hofland v. LaHaye I, 1:11-cv-00053-JAW.)  To state a valid RICO claim, Hofland must allege a violation of 18 U.S.C. § 1962, not just cite the statutory reference in the headers accompanying his various counts.  The only conceivably relevant portion of section 1962 is subsection (c).  Such a claim consists of four elements:  "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"

4

Feinstein v. Resolution Trust Corp., 942 F.2d 34, 41 (1st Cir. 1991) (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)).  Racketeering activity consists of certain "acts indictable under any one or more of certain specified criminal laws" itemized at § 1961(1)(B).  Id. at 42.  A defendant is not subject to liability under RICO absent participation in two or more such acts.  Id. at 41.   Hofland does not allege the type of criminal predicate acts that give rise to liability under RICO.  Numerous cases support my analysis.  See, e.g., Midwest Grinding Co. v. Spitz, 976 F.2d 1016, 1025 (7th Cir. 1992) (addressing a "closed-ended scheme [that] has none of the trappings of a long-term criminal operation that carries with it a threat to society"); Boone v. Carlsbad Bancorporation, Inc., 972 F.2d 1545, 1556 (10th Cir. 1992) ("Plaintiffs allege what is actually a closed-ended series of predicate acts constituting a single scheme . . . to accomplish a discrete goal . . . directed at a finite group of individuals . . . 'with no potential to extend to other persons or entities.'  Thus plaintiffs have not alleged the type of activity that RICO was enacted to address.") (quoting Sil-Flo, Inc. v. SFHC, Inc., 917 F.2d 1507, 1516 (10th Cir. 1990)); Thermodyn Corp. v. 3M Co., 593 F. Supp. 2d 972, 981 (N.D. Ohio 2008) ("Where a single objective is alleged, 'the purported racketeering activity does not bear the markings of the long-term criminal conduct about which Congress was concerned when it enacted RICO.'") (quoting Moon v. Harrison Piping Supply, 465 F.3d 719, 725-26 (6th Cir. 2006)).  Paraphrasing one of these opinions, "it is not uncommon for [a small town dispute] to develop over the course of several years" and the activities undertaken in the course of that dispute do not pose a threat of "similar misconduct" or "continued criminal activity" outside of that focused dispute.  Gamboa v. Velez, 457 F.3d 703, 710 (7th Cir. 2006).  There is no RICO claim here.

**Count II**

The second and third paragraphs of Count II recount events related to what are supposed to be the core allegations of this complaint, but they provide no new factual details. LaHaye and O'Roak set up a roadblock and stopped Hofland in the vicinity of his driveway. Danielson misconstrued events regarding Hofland's allegedly criminal threatening behavior and eventually he was acquitted of criminal charges in connection with these events. Hofland continues with conclusory allegations that Danielson falsified records and conspired with Saucier to deprive Hofland of his civil rights and cause him to be fraudulently convicted of criminal threatening. He was not convicted, end of case. No matter how many times Hofland makes the identical conclusory allegations, there is absolutely no factual basis for the claim and his initial description of Danielson misconstruing events appears accurate, but not actionable, at least not actionable as a federal civil rights claim. (See Recommended Decision I, Doc. No. 76, at 13-15).

**Count III**

Count III first addresses what is claimed to be an illegal October 24, 2008, search of Hofland's vehicle and storage units by two state police officers, Keith and Carpenter. In the second paragraph of this count, Hofland further explains that LaHaye caused Hofland's vehicle to be towed from Hofland's property to another location on October 24. Then Danielson and Moody searched the vehicle at the new location without a warrant and pursuant to a "sham inventory search." (Doc. No. 94-1 at ¶ 3.) Hofland does not mention the Fourth Amendment basis for this claim, but I can discern no other reason to conclude that a constitutional right was allegedly violated by these events.

Rather than stopping there, Hofland goes on to name additional defendants in this count, including James Gillway, a former Searsport police chief and current Town Manager, who failed

6

to properly supervise LaHaye. Eric Walker, the prosecutor, becomes implicated in this count because he used his cellphone to communicate with LaHaye and another state police detective named Jason Andrews. Andrews then communicated, in furtherance of the conspiracy, with Gary Boynton, a private citizen who was some sort of agent of George Perkins.

If Hofland had complied with the Procedural Order referenced above and brought his complaint against Keith, Carpenter, LaHaye, Danielson, and Moody alleging a Fourth Amendment violation on October 24, 2008, I would have ordered this amended complaint served upon them, because arguably he has stated a claim. However, given all the opportunity Hofland has had to present his claim in an understandable and organized fashion, I cannot recommend that this pleading be served upon all of the named defendants and that they be called upon to answer these various conclusory allegations of conspiracy that are highly dubious and have no factual underpinnings.

**Count IV**

Count IV attempts to tie Jason Andrews, Gary Boynton, Richard LaHaye, Steven Saucier, Jessica Danielson, Michael Larrivee, Eric Bonney, Eric Walker, and Paul Hazard (a complaint justice who is alleged to have fraudulently issued a search warrant on or about November 21, 2008, directed at Hofland's property), into a conspiracy initiated by George Perkins. According to Hofland, a search warrant was issued in November and property was seized. That property was eventually turned over to George Perkins by the seizing authorities, apparently because Perkins claimed the property as his. If Hofland has a dispute with Perkins over personal property, he can sue Perkins in state court (as apparently he has, repeatedly). They are both citizens of the State of Maine and there is no indication that diversity jurisdiction is present.

There is no allegation in this supplemental pleading that rises to the level of a constitutional or federal RICO violation.

**Count V**

Count V appears to be leveled at the Town of Searsport and Town Manager Gillway and contains allegations of municipal custom or policy regarding searches and seizures of private property without search warrants, presumably referencing the October 24, 2008, search of the vehicle and storage lockers. The count also accuses the Town of engaging in a RICO enterprise, which, as explained above, goes nowhere. If the Court is inclined to let the October 24 illegal search claim go forward, this allegation, limited to municipal policy and custom pertaining to illegal searches, is part and parcel of the same events.

**Count VI**

In Count VI Hofland finally explains why insurance defense attorney John Lucy has been added to litigation. Apparently Hofland has parallel litigation in state court involving state court torts and aimed at George Perkins, Susan Perkins, and Gary Boynton. On March 7, 2011, John Lucy, representing some of those individuals, had the temerity to file a motion to dismiss, thereby becoming part of the RICO conspiracy. Attorney James Bowie followed suit by raising the same defense for others in the case. Hofland portrays all of this as part of an ongoing RICO conspiracy. I have explained why a RICO conspiracy theory is simply inapplicable to these allegations.

**Count VII**

Hofland's seventh and final count attempts to revive what Hofland describes as his libel, RICO, and "constitutional torts" claims against Walter Griffin, a Bangor Daily News reporter. Hofland has also joined other media representatives in the RICO and constitutional torts theories.

In my view there are no federal claims asserted in this count. These entities can be sued for libel in the state courts. Furthermore, the claims against Griffin were previously rejected when last Hofland sought to amend this complaint. (Doc. Nos. 35 & 40.)

## Conclusion

I have carefully reviewed Hofland's "Supplement Amendment V." Nothing in this document causes me to change my recommended decision regarding dismissal of this case. Some of the allegations in this complaint are already on appeal to the First Circuit in the related matter, Hofland v. LaHaye, II, 1:11-cv-00053-JAW. Hofland was given abundant leave to amend his pleading. On March 18, 2011, he was put on notice via a procedural order regarding what he needed to do to proceed to state a case against those Searsport police officers involved in what he described as an unlawful search and some sort of perjured testimony violation in connection with his criminal trial. Hofland has wasted abundant judicial resources with his redundant filings and he has never complied with the procedural order to get this case in the appropriate posture for service upon the relevant defendants. This Court issues orders in one case and Hofland then files "supplements" in another case that raise the same issues. And he appeals from this Court's orders to the First Circuit, while still trying to renew the same requests in this Court in a different case. I strongly recommend that this Court not reward his refusal to comply with the simplest of procedural orders by authorizing service of the Fifth Supplement on thirty some defendants.

The previously named current defendants, Larrivee, Saucier, Hazzard, and Bonney, are not implicated in the October 23-24 searches in this current version and I would decline Hofland's invitation to incorporate everything he has ever alleged concerning them in any case, including previously in this one, into the current proposed operative pleading in this case. Those

9

four putative defendants, plus the Town of Searsport and James Gillway, were substantively addressed in my prior recommended decision directed at the Fourth Amended Complaint and this current pleading does nothing to change my recommendation. (See Recommended Decision I, Doc. No. 76, at 10 – 12).

Nevertheless, as I have indicated before, Hofland may arguably state a claim of a Fourth Amendment violation in connection with the October 23-24, 2008, roadblock. If this Court feels that it must accept and endorse Hofland's late pleading, I would recommend that the supplemental pleading, Count 3 only, be served on the following defendants: William Keith, III, Miles Carpenter, Richard LaHaye, Jessica Danielson, and Darrin Moody. Keith, Carpenter, and Moody were not named as original defendants and would have to be added to the lawsuit.

I reiterate that I am not recommending that Hofland be given leave to proceed with any aspect of the case, but I have followed this Court's directive in its Order Vacating Order and Setting Aside Judgment (Doc. No. 95) and I have reviewed the Fifth Supplemental Pleading as though it were intended to be the operative pleading in this case, notwithstanding its unwarranted filing. I previously discussed the substantive reasons why I concluded that even the Fourth Amended claim against LaHaye and Danielson was not viable. (Rec. Dec. I., at 17 – 18). I note that Hofland failed to add any significant new factual assertions regarding the searches in this new version, and I fail to see any real basis to move forward with a Fourth Amendment claim in these circumstances simply because he has added new names.

Hofland did not miss a filing deadline because of his incarceration which would explain the untimely filing of the Fifth Supplemental Amendment. There was no pleading expected from him or that he had been ordered to file prior to November 15, 2011. My procedural order issued in March 2011. The recommended decision regarding the Fourth Amended Complaint issued on

June 21, 2011. After being granted numerous extensions, Hofland filed his objection on October 14, 2011. The Court entered its initial order affirming the recommended decision on November 10, 2011. Hofland's unauthorized Fifth Supplement arrived here November 15, 2011. In these circumstances, even though Hofland is proceeding pro se and is a prisoner litigant, I do not believe that he should be granted leave to proceed beyond initial screening because of anything new he has submitted.

I have made it clear from the moment Hofland filed his motion to stay in this case and I granted his request, (see Doc. No. 14), in June 2009, that I understood this complaint, as distinct from his other civil litigation, was uniquely aimed at those events related to a search that gave rise to criminal charges. Hofland has allegedly been acquitted of those particular criminal charges now and I attempted to give him a chance to proceed with this lawsuit. Rather than properly avail himself of that opportunity, Hofland chose to continue to propound his RICO theories and attempt to bring state court judges and private individuals who have been named as defendants in separate lawsuits into this particular case. In my opinion this Court should not allow this conduct to continue and should dismiss this action from the docket in its entirety.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

December 8, 2011